Good morning Your Honours, Beryl Horwitz appearing for the petitioners. My learned colleague and friend Edward Bylock will be addressing this panel on rebuttal if any issues need to be addressed with respect to rebuttal. Your Honours, this is a case involving a request for political asylum filed by petitioners David and Michelle Thomas and their minor children Tenille 10 years old and Sheldon 13 years old. This court generally reviews denials of political asylum for abuse of discretion. However, in this case, because the denial of relief to petitioners was based on a determination that the family did not suffer persecution on one or more of the statutory enumerated grounds, this court must review de novo for legal error and within the confines of the safe Chevron decision. The decision of the emigration judge of denying the political asylum is surprising in the context of her acceptance of all of the lead petitioner's testimony as true. In the government's responsive brief, the government conceded that the emigration judge accepted lead petitioner's testimony as true. Lead petitioner testified that her family suffered persecution because of her father-in-law's racism. She testified as to specific acts of persecution escalating in nature and veracity and culminating in an attempted kidnapping of one of petitioner's minor children. This last incident caused petitioners to flee South Africa because, according to lead petitioner, and I quote, I had to get out. I just couldn't stand it anymore, and if anything had happened, I was scared that they were going to come back and either kill one of us or take one of my children. The incidents described by lead petitioner in her testimony, which the IJ accepted, can only be characterized as persecution resulting in an incontrovertible conclusion that petitioners did suffer persecution on account of their race and because of their familial relationship to lead petitioner's white father-in-law. This court, this circuit, and many other circuits have held that a family constitutes a familial relationship within one of the protected units. Why don't we hold that? Haven't we been holding it and then vacating it and then we seem to be somewhat up in the air about the question? What do you say? Judge Gleeson, it's my understanding that this court, and I think it's set out in our briefs, that a family unit does constitute one of the protected grounds for asylum within the statute. In which case, are you relying on that? Yes, Your Honor. I'll provide it to you right now. I'll be able to now reply to you when we get to the relevant point. You seem to say it in Sanchez-Trujillo, you seem to say the opposite in Estrada-Posadas. There were two later cases in which we still held which were then vacated. There was another case recently which assumed it but didn't decide it. That's where I think we are. Your Honor, if I could refer the Court to page 14 of the opening brief and to the case of Sanchez-Trujillo, Hernandez-Ortiz, where the issue is dealt with. If that, in fact, is the case, Your Honor, then membership in a particular social group means a group united by innate characteristics so fundamental to the members' identities that they cannot or should not be required to change it. The petitioner's relationship with their father-in-law cannot be changed, and particularly the perception of the perpetrators that they are so related cannot be affected by anything the petitioners did with respect to their relationship to their father-in-law. The IJ found that the attacks on petitioners to be motivated by what I would characterize as, quote, economic or quasi-political reasons, that is, getting back at the whites for stealing their land. Not only was there no evidence of this, it contradicted the undisputed evidence that the persecution was because of race or membership in a family group. Because the IJ found some quasi-political or historical motivation, she wrongly concluded that governmental action was an element in establishing persecution. And I quote from her decision, When the Court looks at who is the persecutor in this case, the Court does not find that any of these actions by these people is sponsored by the South African government. Close quote. Not only was the conclusion of motivation unsupported, the test applied was simply wrong. Persecution occurs if a government is unwilling or unable to control the elements of the persecution or to protect the persecuted group member. Well, here, I mean, one of the problems was that for perhaps understandable reasons, Mrs. Thomas was not very anxious to have the government investigate some of this. She reported it, but she basically impeded their ability to really investigate. Yes, Your Honor, because her testimony is quite clear on that point. She didn't believe that the authorities were in a position to assist in bringing the perpetrators to justice. And let me just point out that the record is clear in one particular instance in that regard. Mrs. Thomas points out that during one of the incidents, one of the attacks on her, the individuals wore the logo of the construction company that the father-in-law was involved in. It blows one's mind to conclude that these individuals, these perpetrators would have the impertinence and the audacity and the arrogance to confront the petitioner with threats of death and other situations with logos blazoned on their chests. So she had no belief that the authorities were in a position to come to their aid. But doesn't that make it difficult to determine whether they were unable or unwilling to control it because she wasn't willing, essentially, to have them try? Well, she did report, Your Honor. What more can you do? Well, she could have attempted to identify the people, and she didn't want to do that. Well, Your Honor, she filed a report. She expected the authorities to exercise and fulfill their duties. Apparently, they did not do so. But she was the victim and the person who had the information, and when asked, well, would you go down to the construction yard and help try and find out who these people were, she said, I wouldn't do that. Well, she was obviously concerned about her continuing safety and that of the safety of her family. I'm not saying it's not understandable, but I'm saying that it makes it difficult to determine whether the government was unwilling or unable to control it. Well, except, Your Honor, may I point out that the evidence that accompanied the background evidence that accompanied the hearing before the IJ is overwhelmingly replete with examples of the authorities' inability to control crime to the extent that mob justice prevails. Your Honor, I'm running out of time, and I would like to reserve some time for rebuttal unless you have any further questions. All right. All right. Thank you very much. Good afternoon. Hillel Smith on behalf of the government. Your Honors, this is a case about a family who left South Africa because of several acts of personal retaliation and somewhat offensive behavior, some of which, however, cannot be attributed to anyone. Asylum law is generous in its scope of protection. However, it's not unlimited. It only protects those who have shown that they were persecuted or that there is a reasonable possibility that they were persecuted because of one of five statutory grounds. It's in fact the family was a recognized social group. It wouldn't just be a classic case of somebody who was persecuted because of her membership in a family. I mean, her story is that she had no use for the father-in-law. She couldn't stand the father-in-law. She disapproved of everything he did and everything he said, but she was being persecuted because he was her father-in-law. That is her claim, but in this case, the evidence does not compel the conclusion that this family or this individual was persecuted because of family membership. It was because the record supports the immigration – supports the conclusion that she was harmed or that these were acts of personal retaliation because of conduct, because of the father-in-law's, Basrani's conduct. But she's not the father-in-law, so how is it different than the other cases of that? That's the motivation. It's his conduct, not simply because they're white or because of the family trait or characteristic. This is a case about personal retaliation. For example, we had an earlier case called Chen, which was then vacated, in which, as my understanding was, it was a very similar claim. That is, that the person was being persecuted because of her mother's crimes or her mother's activity. Okay. So I don't understand. I mean, that's problem A. Problem B is that nobody in this case, to my knowledge, here to four, has ever considered the family claim as a family claim because they've never recognized the family claim as being a valid. That's true. And this, my understanding, at least from the case law on this circuit, I believe the circuit had previously indicated that family membership was not a cognizable basis, and it did kind of go back and forth, but it's not well settled. But even so, in this case, the record does not support that determination or does not compel, rather, that determination because this is a case about people who flee their country because of acts of personal vengeance or personal retribution and crime is well established in this circuit. Persecution simply does not encompass isolated acts of harassment, private acts of indiscriminate violence, general lawlessness between diverse populations, as this Court stated in Singh v. INS. Can I ask a question? Apparently, in one of our earlier cases, which was also vacated, we mentioned that there was a pending regulation that was going to address the particular social group. Do you know if it was ever codified? It was proposed December 7, 2000? Right. Proposed, but to my knowledge, has not been codified. I see. Okay. And so it's not a well-settled issue, but this is something that the fact finder, the immigration judge, obviously evaluated and had to consider. But you didn't appear to have evaluated. You did not appear in any respect to have considered the question whether family membership is a particular social group or purposes of possession. I'm sorry, Your Honor? I did not. Did he consider in any respect whether or not this was persecution based on membership in a particular social group? Did he consider that question? I do not think that was the, not to my knowledge, or at least, no, not as I remember. So he didn't consider it a family issue at all? Right. Right. He didn't. He considered it either race or political opinion discrimination. Right. That was the main claim. The other claim was race or perhaps political opinion. I'm not, I don't. All right. So how can you say that he found that she wasn't in fact discriminated against because of her membership in the family? The reason for these acts of retribution are based on conduct, based on private conduct between two. Not her conduct. Private conduct. No, but it's based on someone else's conduct, not her conduct. Correct. But it's based on the father-in-law's conduct. And that wouldn't be. That's the reason. That's it. That's why these acts happen, and as unfortunate as they are. But in some of them, I think I need to stress, some of these acts cannot be attributed to anyone, such as the incident where I think some individual or individuals left something on the front porch. We don't know who did it. There is another incident I think that was similar. We don't know who did it. Even in the instance where she was threatened, people showed up in company uniforms. There is no other explanation as to why the threat was made. They just asked for Basrani, for the father-in-law. But nothing else happened. This Court. Well, wasn't there an attempt to kidnap one of the children? That was, I think that was one of the, that was the most serious incident of all the incidents. But that's, again, looking at all the circumstances, there are some that are attributed that could be contributed to these workers, these employees. Some are not, cannot be attributed. We would have to speculate why some of these incidents occurred. But having to speculate that, why they occurred, does not compel the finding that they were certainly occurred because of this reason. The fact of the matter is. Well, that doesn't seem reasonable if they occurred because of the father-in-law's past conduct. That you could infer that. And that's what I mean. What else would you infer? Well, you could. It's a country like many other countries. A Halloween prank or something like that. No, it could very well be. We don't know. We would have to guess. And that's what, you know, this. But that is, again, once again, I don't know if you're the same lawyer, but you're arguing against the INJ's finding. The INJ didn't find, seemed to believe the story, generally. Right. That the reason this was happening was because of a father-in-law's behavior. But he found that that was not a protected ground. Correct. Right. So, therefore, we're in the ballpark of not that this didn't happen because of a father-in-law's behavior, but because that is a protected ground. So that's our legal question, no? Okay. So your question then is, is the, are these incidents because of the conduct of the father-in-law? Is that a protected ground? Well, my question is, shouldn't, don't we have to take that as being the world that we're in right now? Because the INJ, contrary to what you're arguing, did not find that these things were not connected to the father-in-law, but, in fact, found that they were connected to the father-in-law, but that wasn't a protected ground. You didn't have a protected class here. There is no, no, it's not a protected ground. This is personal retaliation. Even this Court and Circuit has found that purely personal retaliation does not constitute persecution. The ---- Well, let's say it's not personal retaliation. But even assuming that this was a protected ground, we still have the other problem. The Petitioners have not sustained the burden of establishing that these acts of retribution were from the government or by groups or any of these that the government was unable or unwilling to control. And that's ---- Well, that seems to me to be a stronger ground, and I'd like to hear what you have to say about that. Well, that's, that's, the burden has not been sustained with that, with respect to that issue. We don't, we just don't have any evidence to show that the government police in South Africa did not want to protect them, did not try to protect them. And that, that, that is a problem. That's the other problem. One is the nexus, and also whether or not this rises to the level of persecution. That's a separate issue. And, of course, the third is, is this ---- What did the police do after this was reported? The police, there was an attempt to investigate, but as this Court has previously noted, the, I believe the lead Petitioner did not follow up or did not try to identify the perpetrators. The Petitioner, the asylum applicant has to, you know, take steps to show that the government, that the police, in this case the State, simply cannot protect her.  And without any evidence to show that, or without any attempt to say, well, the police didn't do anything, then an immigration judge simply cannot find, well, then you are qualified for asylum. That is part of the statute. And that's a, that's just another issue, and that's just another problem in this case. So we have one, of course, protected ground. Is this, is there a nexus? Second, does this cost you persecution? And as I said before, in this circuit and other circuits I've addressed, persecution does not encompass general crime in a country. Lots of, you know, crime is, there's a rising tide of crime in South Africa. That's the same issue a second time. I mean, you have to, I assume you would agree that if, in fact, poor people surrender her and try to take her child away because of her political opinion, that would be persecution. Do you agree with that? In that hypothetical, possibly. Kidnapping your child would not be persecution. I'm not, I can't say whether or not it is or is not. That's not the. That's not your point. Your point is back to the same one again, i.e., it's not a protected ground. You're really saying the same thing twice. If it's, if there's, let's just assume for the sake of argument that there's an act that is, that rises to allow persecution. If it's because of someone's political opinion, obviously, yes, that's persecution. This is not, that's not the case here, though. This is a case where some unidentified people came and perpetrated some acts of criminal, arguably criminal behavior on, unfortunately, on this family. And, but there is nothing here that is not enough simply to say that in my country there is widespread violence, lawlessness, please don't send me back.  How about, how about, how about imputing the father-in-law's political opinion to the family? But what is the father-in-law's political opinion? We, there has to be concrete evidence that the father-in-law, that, that, well, first of all, we have to show the perpetrators. We have evidence here that, that he was abusive to black people, right? Right. Okay. So why, why wouldn't, couldn't you argue that that, that view, which is a political opinion, is, was attributed by the people that came around wearing those suits with the logo on being attributed to the family? That's, it's a, it's a possibility, but I don't, I don't see how the evidence compels that conclusion because the, there's not enough evidence to show that the perpetrators were motivated. That's the key. They were motivated by that ground. It could have been for any number of reasons. Why, why do you think they came over to the house? We don't really know because of the conduct, perhaps because of the conduct of the father-in-law, but not, that's not necessarily political. It may be, but again, the, the standard review, the Court has to affirm the immigration compels the finding that this was persecution, that it was motivated by a statutory ground, and that the government was unable or unwilling to protect them. Well, other than that, what other ground, what other basis would there be for those people coming over to the house? They didn't like, they didn't like the father-in-law. Well, why didn't they like him? Why didn't they like him? Yeah. Because he, apparently, we don't, you know, we could guess and try to venture why or what happened. We don't have that evidence, so we don't know. He may have not been fair to his employees. He may have mistreated them. But that, that's, you know, that happens all over the world. But wasn't there some evidence there that he didn't, that he didn't respect black people, he didn't like them, he was hard on them? That was one of the, that was part of the record, and it's his conduct that they were motivated by, may have been motivated by, but not necessarily his political opinion. At least their record does not have evidence to establish that they were. But in any event, I mean, what would be the evidence that they were imputing the political opinion to his family, as opposed to, as she said, attacking the family to get back at him because it was easily, easier to attack the family than to attack him? There would have to be evidence that there's a perceived political, opposition to political opinion imputed upon her. It's not, you cannot just speculate or assume that that's the fact. And their evidence here does not, you know, does not establish that. It's much more reasonable to assume, it's much more reasonable to assume that this is evidence motivated by. It's a lot easier. It seems to me where we are is that if we think that the, if we were to conclude that a membership in a family is a membership in a protected social group and therefore a protected ground, then the only way the government would prevail is if we found that there was insufficient evidence that the, that the South African government was unable or unwilling to control the violence. If that's the short version. If the evidence compelled finding that this was one person, well, it's a low persecution and two is on a count of statutory basis, then yes, that's a third issue. Okay. And I see my time is up. Yeah. All right. We'll give, could you have a seat? Okay. Thank you. Okay. May it please the Court. Edward Bialak, the co-counsel for Petitioners. Your Honors, in the minute or so I have remaining, I just want to address several points. And Judge Pragerson had a, I think, some germane comments, and that is the government has never been able to introduce any satisfactory rationale for why these attacks were occurring. The undisputed testimony of the Petitioner was that they were attributed to the conduct of her father-in-law. Her father-in-law, the evidence was a sadistic, racist, abused and misused his workers, his black workers. They couldn't get, these people boldly wearing the overalls couldn't get at the father-in-law because of his situation. But they could get at the other family members. Now, we have cited the, there's admittedly few cases that have found a family to be a suspect group with respect to the relevant statutes. The First Circuit has so found, and we've cited it in the brief. But this Court has set forth the test for the definition of a particular social group, and it includes a group united by innate characteristics so fundamental to the identities or consciences of its members that the members cannot or would not be required to change it. That's a classic definition of a family group. The fact is the government of South Africa is unable to protect their citizens from these kinds of racially motivated attacks. That's the gist of the, our position in this case. Now, the police officers work for the national government, or they work for? Well, they work for the government. I mean, do they work for the national government, or do they work for local government? Well, I'm not sure that the record clarified, but I assume they work for the local municipality. But that's, if the Court looks at the statistics that are part of the record, crime is not getting any better in South Africa. But do you really need to deal not with crime in general? If you deal with crime in general, you need to deal with the very particular circumstances here. Right. And the question is, given these very particular circumstances, this is a targeted, the assertion that it's a targeted crime as to which you have a pretty good idea who would be Well, that's precisely our point, Your Honor. But they didn't get help because the, again, for perfectly understandable reasons, perhaps, the family decided that they were going to get out of there instead of trying to help the police find out who was doing this. Well, there's two points to that. Your Honor's correct if the reasons are understandable. The fact is this is not just an isolated, the last incident was not isolated. This was, I believe it was the fifth incident. Each one All I'm saying is I don't think you can rely on general No, it's not generalizing circumstances about the control of crime because here there were, the whole allegation is that there was a defined group of people who could have been the perpetrators. And with some investigation, they may well have been found. Well, I think it has to be viewed, Your Honor, in the context of the past incidents which were reported. The police came. They patrolled. They took fingerprints. Nothing happened. But they weren't very serious. This one was very serious. But the family decided that instead of pursuing it, they wanted to leave. Well, and that's understandable. And I don't think there's a bright line It may be understandable, but it may take them outside the statute. Well, Your Honor, I think it has to be viewed, the subjective view of the Petitioners has to be taken into account. When you have repeated and escalating incidents, there comes a time when the safety of the family comes paramount. And perhaps that's the point that they reached, and they did not have any further faith in the ability of law enforcement to protect them. And who's to say, and I don't think the I.J. ever even got into that issue. The I.J. went off on the view that these attacks were economically motivated, and therefore, there was some reason to excuse them or at least not count them as with the seriousness they were entitled to. Since my time is well expired, unless the Court has questions, I'll submit. Thank you, Your Honor.  This matter is submitted, and the Court will stand adjourned.
judges: Pregerson, Fernandez, Berzon